UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RODGER FOSBINDER,

Plaintiff,

v.

COUNTY OF SAN DIEGO, et al.,

Defendants.

Case No.:  24-cv-733-RSH-SBC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS**

[ECF No. 6]

Before the Court is a motion to dismiss filed by defendant County of San Diego ("County"). ECF No. 6. Pursuant to Local Civil Rule 7.1(d)(1) the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court grants in part and denies in part the County's motion.

## I.     BACKGROUND

### A.     Factual Background

The instant case arises from the death of Joshua Lee Fosbinder while in custody as a pretrial detainee in San Diego Central Jail. The Complaint alleges the following.

On June 11, 2022, Mr. Fosbinder was arrested and held in San Diego Central Jail. ECF No. 1 ¶ 1, 13–14. Upon intake, he was placed in a sobering cell due to "erratic

behavior." *Id.* ¶ 16. A form completed on the same day indicated Mr. Fosbinder had previously been placed in "Enhanced Observation Housing" from March 5, 2022 to March 6, 2022, based on self reports of suicidal ideation, depression, and bipolar disorder. *Id.* ¶ 17. Mr. Fosbinder was suspected of being under the influence of unknown controlled substances. *Id.* ¶ 18. He further admitted to daily methamphetamine use for the past seven months and using heroin and fentanyl "a couple of times." *Id.* He was released from the sobering cell on June 12, 2022. *Id.* ¶ 19.

On June 13 or 14, 2022, during a psychiatric sick call with the San Diego County Sheriff's Department, Mr. Fosbinder disclosed he had been diagnosed with schizophrenia and attention-deficit/hyperactivity disorder ("ADHD"). *Id.* ¶ 20. A "Psychiatric Initial Evaluation" was completed. *Id.* ¶ 21. According to the evaluation, Mr. Fosbinder had a "history of psychiatric treatment in the community" with multiple mental health safety holds under California Welfare & Institutions Section 5150 ("5150s"). *Id.* The evaluation also indicated he had been diagnosed with bipolar disorder, schizophrenia, and ADHD, and included information regarding his suicidal ideations. *Id.* ¶¶ 21–22. Mr. Fosbinder was placed in Enhanced Observation Housing on June 14, 2022. *Id.* ¶ 23.

On June 15, 2022, during an Inmate Safety Program ("ISP") assessment, the Complaint alleges Mr. Fosbinder "endorsed SI/HI" (presumably, suicidal ideation/homicidal ideation), "suicide by cop," and explained he "wanted to be shot" or "planned to get serious hurt by another inmate" because he planned "to get into a fight and have the other person kill me." *Id.* ¶ 24. His "Current Suicide Risk Acuity" was marked "High." *Id.*

Mr. Fosbinder was later moved into general population housing at some undisclosed date. *Id.* ¶ 25. He was still in general population housing on September 18, 2022 when he was found unresponsive in his cell. *Id.* ¶¶ 26, 28. Mr. Fosbinder ultimately died on September 21, 2022 in the hospital from an overdose of fentanyl or "other substances provided to him inside the facility." *Id.* ¶ 30.

///

### B.    Procedural Background

On April 23, 2024, plaintiff Rodger Fosbinder, Decedent's father, filed this action against the County and two categories of Doe defendants. *See* ECF No. 1.[1] The Complaint asserts federal civil rights claims under 42 U.S.C. § 1983 for deliberate indifference against the Doe defendants, deliberate indifference against the County under *Monell*, and deprivation of familial relationship (Claims 1 through 3). *Id.* ¶¶ 43–74. The Complaint further asserts claims for negligence, violation of California's Bane Act, violation of California Government Code § 845.6, and wrongful death (Claims 4 through 7). *Id.* ¶¶ 75–106.  On May 31, 2024, the County filed the instant motion to dismiss. ECF No. 6. Plaintiff filed a response, and the County filed a reply. ECF Nos. 8; 9.

## II.    LEGAL STANDARD

### A.    Failure to Join a Party under Rule 12(b)(7)

Pursuant to Federal Rule of Civil Procedure 12(b)(7), a party may seek to dismiss an action "for failure to join a party under Rule 19." *See* Fed. R. Civ. P. 12(b)(7). "Federal Rule of Civil Procedure 19(a) requires joinder of parties whose presence is necessary to ensure complete and consistent relief among the existing parties or whose interests would be impeded were the action to proceed without them." *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020). "When a required party cannot be joined, Rule 19(b) requires dismissal when the action cannot proceed in equity and good conscience in the absence of the required party." *Id.*

Rule 19 imposes a three-step inquiry. *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). A court first determines "whether an absent party is a required party; then whether joinder is feasible; and finally whether the case can fairly proceed in the party's absence." *Jamul Action Comm.*, 974

---

[1]    The Complaint also names Decedent's biological mother, Janet Elaine Patterson, as a nominal defendant. ECF No. 1 ¶ 10.

F.3d at 996 (9th Cir. 2020).

**B.    Failure to State a Claim under Rule 12(b)(6)**

    *1.    General*

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Pleading facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

    *2.    Doe Defendants*

"[W]hen a plaintiff has claims against an unknown defendant [in federal court], the plaintiff must still meet federal pleading standards when alleging facts against such defendants." *Lomeli v. Cty. of San Diego*, 637 F. Supp. 3d 1046, 1058 (S.D. Cal. 2022). Specifically, Plaintiff must "allege 'specific facts showing how each particular [Doe] defendant violated [Decedent]'s rights.'" *Segura v. City of La Mesa*, 647 F. Supp. 3d 926,

941 (S.D. Cal. 2022) (quoting *Keavney v. Cty. of San Diego*, No. 3:19-cv-01947-AJB-BGS, 2020 U.S. Dist. LEXIS 128512, at *9 (S.D. Cal. July 20, 2020)); *see Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.").

### 3. *Monell*

In the motion to dismiss context, the Ninth Circuit has made clear claims of *Monell* liability must comply with the basic principles set forth in *Twombly* and *Iqbal*. *AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); *see e.g., Alter v. Cty. of San Diego*, 635 F. Supp. 3d 1048, 1055 (S.D. Cal. 2022). First, a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE*, 666 F.3d at 637. Second, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

## III. ANALYSIS

### A. Necessary and Indispensable Party

The County moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(7), arguing Decedent's biological mother is a necessary party who cannot merely be named as a nominal defendant in this case. ECF No. 6-1 at 10–13.

Under California law, wrongful death actions are "joint, single and indivisible." *Ruttenberg v. Ruttenberg*, 53 Cal. App. 4th 801, 807 (1997). As the California Supreme Court explained in *Cross v. Pacific Gas & Electric Company*:

> In stating that an action for wrongful death is joint, it is meant that all heirs should join or be joined in the action and that a single verdict should be rendered for all recoverable damages; when it is said that the action is single, it is meant that only one action for wrongful death may be brought whether, in fact, it is instituted by all or only one of the heirs, or by the personal

representative of the decedent as statutory trustee for the heirs; and when it is said that the action is indivisible, it is meant that there cannot be a series of suits by heirs against the tortfeasor for their individual damages.

*Cross v. Pac. Gas & Elec. Co.*, 60 Cal. 2d 690, 694 (1964). Although an omitted heir is not an "indispensable party" to a wrongful death action, an omitted heir is, nevertheless, a necessary party. *Ruttenberg*, 53 Cal. App. 4th at 808; *see Estate of Burkhart v. United States*, No. C 07-5467 PJH, 2008 U.S. Dist. LEXIS 65893, at *21 (N.D. Cal. Aug. 26, 2008) ("Ordinarily in a wrongful death action brought under California law, all heirs must join, and complete relief is not possible without the presence of all the heirs."). For these reasons, "if an heir refuses to participate in the suit as a plaintiff, he or she may be named as a defendant so that all heirs are before the court in the same action. An heir named as a defendant in a wrongful action is, in reality, a plaintiff." *Ruttenberg*, 53 Cal. App. 4th at 808.

Here, Decedent's biological mother, Ms. Patterson, executed a waiver of service in this action which was filed on the docket on June 10, 2024. ECF No. 7. As of the date of this Order, Ms. Patterson has taken no further action to indicate she wishes to participate in the litigation. *See* Docket. Under these circumstances, it is not improper for Plaintiff to name Ms. Patterson as a nominal defendant. *See G.M. v. Poole*, No. 2:17-cv-02415-TLN-CKD, 2019 U.S. Dist. LEXIS 156259, at *10 (E.D. Cal. Sep. 11, 2019) ("If after being properly served the remaining necessary parties do not wish to participate in the current action, then their names can be added nominally as defendants to the cause of action."); *J.A.J. v. Cal. Highway Patrol Officer*, No. 1:18-cv-01138-DAD-SKO, 2018 U.S. Dist. LEXIS 216952, at *6–7 (E.D. Cal. Dec. 26, 2018) (minor child in wrongful death action properly named as a "nominal defendant").[2]

---

[2]    The Court notes the County made its Rule 12(b)(7) argument *before* Plaintiff filed Ms. Patterson's waiver of service.

For these reasons, the Court denies the County's motion to dismiss under Rule 12(b)(7).

## B.    Doe Defendants

The County moves to dismiss the Doe defendants from this case, arguing Doe-defendant style pleading is "not permitted" under the Federal Rules. ECF No. 6-1 at 13–15. The Federal Rules of Civil Procedure "neither authorize nor prohibit the use of fictitious parties." *Novalk, Ltd. Liab. Co. v. Sedgwick*, No. 3:21-cv-973-BEN-LL, 2021 U.S. Dist. LEXIS 101707, at *5 (S.D. Cal. May 28, 2021). In the Ninth Circuit, "[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Nevertheless, "situations arise . . . where the identity of alleged defendants will not be known prior to the filing of a complaint." *Id.* "In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.*

Here, Plaintiff pleads claims against two categories of Doe defendants. ECF No. 1 ¶ 9. Does 1-3 are alleged to be "correctional officers whose duties included classification of detainees for housing purposes." *Id.* Plaintiff alleges Does 1-3 moved Decedent into general population housing "despite the ongoing obvious risks of self-harm[.]" *Id.* ¶ 25. Does 4-10 are alleged to be "correction[al] officers whose duties included floor supervision." *Id.* Plaintiff alleges the inspections conducted by Does 4-10 "were untimely and inadequate." *Id.* ¶ 27. Plaintiff represents the identities of the Doe defendants can be found in the San Diego Central Jail's "JIMs" electronic database and the jail's safety-check log or staff roster. ECF No. 8 at 30–31.

///

///

///

///

///

The Court finds the dismissal of the Doe defendants—solely on the basis that their identities are unknown—premature at this early juncture.[3] *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (district court erred in dismissing complaint against Doe defendant simply because plaintiff "was not aware of Doe's identity at the time he filed his complaint."); *Quick v. Dupnick*, 951 F.2d 361 (9th Cir. 1991) (reversing and remanding to allow plaintiff opportunity to uncover Doe defendants through limited discovery); *Lincoln v. Chula Vista Police Dep't*, No. 22-cv-01569-WQH-BJC, 2024 U.S. Dist. LEXIS 173742, at *14–15 (S.D. Cal. Sep. 25, 2024) (holding it was premature to dismiss all Doe defendants before plaintiff had the opportunity to conduct limited discovery).

## C.    Failure to State a Claim

### 1.    Claim 1: Deliberate Indifference (Does 1-10)

#### a.    Deliberate Indifference—Pretrial Detainees

Section 1983 authorizes civil actions for the "deprivation of any rights . . . secured by the Constitution and laws" against a party acting under color of state law. 42 U.S.C. § 1983. Plaintiff's deliberate indifference claim against the Doe defendants alleges violations of Decedent's "constitutional right to adequate medical treatment." *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). For pretrial detainees, this right arises under the Due Process Clause of the Fourteenth Amendment. *Id.*; *Est. of Hernandez v. Cty. of San Diego*, No. 24-cv-00032-DMS-DEB, 2024 U.S. Dist. LEXIS 178087, at *8 (S.D. Cal. Sep. 30, 2024). The "claims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference

---

[3]    The Court must still consider whether the Complaint sufficiently pleads claims against the Doe defendants. *See Lomeli*, 637 F. Supp. 3d at 1058.

standard." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) ("*Gordon I*") (internal quotation marks omitted).

Under *Gordon I*, pretrial detainees alleging that jail officials failed to provide constitutionally adequate medical care must show:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment];
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Sandoval*, 985 F.3d at 669. "A defendant can be liable even if he did not actually draw the inference that the plaintiff was at a substantial risk of suffering serious harm, so long as a reasonable official in his circumstances would have drawn that inference." *Russell v. Lumitap*, 31 F.4th 729, 739 (9th Cir. 2022). "Under this objective reasonableness standard, a plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* (quoting *Gordon I*, 888 F.3d at 1125).

### a.    Housing Assignments

Plaintiff alleges Does 1-3 acted in deliberate indifference to Decedent's medical needs by moving him into general population housing "despite the ongoing obvious risks of self-harm." ECF No. 1 ¶ 25.

The Ninth Circuit has "long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (*including suicide prevention*) under a 'deliberate indifference' standard." *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010) (emphasis added); *see*

*Simmons v. Navajo Cty.*, 609 F.3d 1011, 1018 (9th Cir. 2010) ("[A] heightened suicide risk can present a serious medical need."). For example, in *Clouthier*, the Ninth Circuit held that a mental health specialist who failed to take adequate precautions to protect a pretrial detainee who had "recently expressed suicidal intent" was not entitled to qualified immunity. 591 F.3d at 1245. *Clouthier* held a rational jury could conclude the specialist was "on notice" of the detainee's suicidal condition as the specialist had been provided a copy of another staff member's notes which reflected that the detainee had: (1) previously attempted suicide; (2) been put in a suicide smock; and (3) needed to be placed in observation. *Id.* at 1244. Despite this, the specialist failed to inform officers to keep the detainee in regular suicide monitoring and told officers the detainee could be given regular prison clothes and a blanket—which the detainee eventually used to commit suicide. *Id.* at 1238–40. The Ninth Circuit concluded that "a reasonable mental health professional could not have thought it was lawful to remove key suicide prevention measures put in place by a prior Mental Health staff member." *Id.* at 1245.

Similarly, in *Cabrales v. County of Los Angeles*, an action was brought against the County of Los Angeles and its jail employees alleging officers had demonstrated deliberate indifference to a pretrial detainee's "serious medical and psychiatric needs." *Cabrales v. Cty. of L.A.*, 864 F.2d 1454, 1457 (9th Cir. 1988). The detainee had previously been placed in a "behavior observation module" where he attempted to commit suicide. *Id.* The decedent was released back into general population after a psychiatrist concluded he was not a danger to himself or others. *Id.* at 1457. After being involved in an altercation in general population, the detainee was sentenced to a "disciplinary isolation module" where he committed suicide by hanging himself from a towel rack with an ace bandage around his neck. *Id.* The Ninth Circuit affirmed the jury verdict imposing liability. *Id.* at 1467; *see Clouthier*, 591 F.3d at 1245 ("In 1988, we affirmed a jury verdict imposing § 1983 liability on a municipality and its official policymaker for deliberate indifference to a pretrial detainee's mental health needs that resulted in the detainee's suicide").

Defendant argues Plaintiff has not alleged sufficient facts to show that a reasonable official would have known of the substantial risk to Decedent in placing him in general population. ECF Nos. 6-1 at 16–17; 9 at 3. The Court agrees. Plaintiff argues Does 1-3 were "on notice" of Decedent's mental condition based on the records available to them as "correctional officers whose duties included classification of detainees for housing purposes." ECF No. 8 at 16. However, the only records set forth in the Complaint are those completed upon Decedent's intake on June 11, 2022—and in the days immediately afterwards—indicating he had suicidal ideations. ECF No. 1 ¶¶ 15–24. His death occurred months afterwards. *Id.* ¶¶ 26, 30. The Complaint does not allege whether Decedent's risk of suicide was ongoing or how Does 1-3 would know of this ongoing risk. Notably, the Complaint is silent as to when Does 1-3 made the decision to transfer Decedent into general population housing. The Complaint also does not explain how Decedent's mental condition would put officers on notice of his decision to ingest fentanyl or other substances.

Absent any additional details as to the circumstances under which Decedent was transferred into general population, Plaintiff has failed to state a deliberate indifference claim. *See Est. of Posard v. L.A. Cty. Sheriff's Dep't*, No. CV 23-10460 PA (Ex), 2024 U.S. Dist. LEXIS 165651, at *13–14 (C.D. Cal. Sep. 12, 2024) (holding a pretrial detainee's comments during the admissions process, "sad" demeanor, and prior history of suicidal ideations was not sufficient to command an inference his suicidal state would have been apparent to medical staff); *M.B. III v. California*, No. 2:17-cv-02395-WBD-DB, 2019 U.S. Dist. LEXIS 21111, at *9 (E.D. Cal. Feb. 8, 2019) (allegation defendants accessed and reviewed prison records documenting decedent's previous suicide attempts and placement in a crisis bed insufficient to show any defendant knew of decedent's serious medical need in the period immediately preceding his death "[g]iven the months that had elapsed between decedent's prior suicide attempts and his death"); *Damits v. Cty. of L.A.*, No. CV 17-8620-DMG (JPRx), 2018 U.S. Dist. LEXIS 223902, at *8 (C.D. Cal. Sep. 24, 2018) (finding allegations pretrial detainee had a known history of mental

illness and that defendants were aware of this information "through medical reports and evaluations provided to them as part of detention" did not establish "that a reasonable official would have known that such measures were necessary to avert an 'impending suicidal crisis'").

For these reasons, the Court grants the County's motion to dismiss Plaintiff's deliberate indifference claim against Does 1-3 based on Decedent's transfer to general population housing.

### b.   Safety Checks

Plaintiff alleges Does 4-10 acted in deliberate indifference to Decedent's medical needs by failing to perform "adequate safety checks" on him, despite the risks to his health being "obvious to any reasonable officer." ECF No. 1 ¶ 48.

In *Gordon v. County of Orange*, the Ninth Circuit held pretrial detainees "have a right to direct-view safety checks sufficient to determine whether their presentation indicates the need for medical treatment." *Gordon v. Cty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (*Gordon II*); *see Hyde v. City of Willcox*, 23 F.4th 863, 873 (9th Cir. 2022). Nevertheless, "[t]he constitutional right to direct view safety checks does not displace the requirement that 'litigants when first bringing a case plead facts plausibly satisfying each element of their deliberate indifference claim.'" *Est. of Hernandez v. Cty. of San Diego*, No. 24-cv-00032-DMS-DEB, 2024 U.S. Dist. LEXIS 178087, at *9 n.1 (S.D. Cal. Sep. 30, 2024) (quoting *Schmitz v. Asman*, No. 2:20-cv-00195-JAM-CKD PS, 2021 U.S. Dist. LEXIS 224413, at *15 (E.D. Cal. Nov. 19, 2021), report and recommendation adopted by 2021 U.S. Dist. LEXIS 243697, at *3 (E.D. Cal. Dec. 20, 2021). Here, the Complaint makes only general allegations the safety checks performed by Does 4-10 were "untimely and inadequate." ECF No. 1 ¶ 27. Such allegations are insufficient to state a claim for multiple reasons. *See Est. of Hernandez*, 2024 U.S. Dist. LEXIS 178087, at *12 (holding general allegations Doe defendants "failed to perform proper safety checks" were insufficient to state a claim).

///

24-cv-733-RSH-SBC

First, the Complaint does not sufficiently explain *how* the safety checks performed by Does 4-10 were inadequate. Plaintiff alleges Does 4-10 failed to conduct "direct view" observations of Decedent and "also" failed to make observations "within the required time limit." ECF No. 1 at ¶ 27. It is unclear what "time limits" Plaintiff is referencing.[4] The Complaint does not establish whether there was some standard schedule for cell monitoring. It is unclear whether Plaintiff is alleging that Does 4-10 failed to conduct *any* direct view safety checks on the day of Decedent's death, failed to timely perform a direct view safety check, performed insufficiently thorough checks, or something else entirely.

The Complaint also fails to sufficiently allege that the actions taken by Does 4-10 "were the result of an intentional decision rather than mere or even gross negligence or oversight." *Cavanaugh v. Cty. of San Diego*, No. 3:18-cv-02557-BEN-LL, 2020 U.S. Dist. LEXIS 212779, at *36 (S.D. Cal. Nov. 12, 2020), *aff'd*, No. 20-56311, 2021 U.S. App. LEXIS 37921, at *2 (9th Cir. Dec. 22, 2021). "Without some clearer description of how [Does 4-10] failed to properly perform safety checks, as well as a clearer description of the risk to [decedent] created by the [officers'] respective conduct in performing the safety checks (if they did), there is at best a negligence claim that is pled, but not a plausible Fourteenth Amendment deliberate indifference claim." *Jack*, 2017 U.S. Dist. LEXIS 150367, at *14–16; *see Cravotta v. Cty. of Sacramento*, No. 2:22-cv-

---

[4]     In his briefing, Plaintiff argues the California Code of Regulations requires safety checks "at least hourly." ECF No. 8 at 22. This allegation appears nowhere in the Complaint and Plaintiff cannot amend his Complaint through his opposition brief. *See e.g.*, *Microsoft Corp. v. Hon Hai Precision Indus. Co.*, No. 19-CV-01279-LHK, 2020 U.S. Dist. LEXIS 31402, at *29 (N.D. Cal. Feb. 20, 2020) "[A] party cannot amend the complaint through briefing.") (internal quotation marks omitted); *SriCom, Inc. v. eBisLogic, Inc.*, No. 12-CV-00904-LHK, 2012 U.S. Dist. LEXIS 131082, at *16 (N.D. Cal. Sep. 13, 2012) ("Allegations raised for the first time in the briefing are not considered in determining the sufficiency of the complaint.") (internal quotation marks omitted).

24-cv-733-RSH-SBC

00167-DJC-AC, 2024 U.S. Dist. LEXIS 26740, at *17 (E.D. Cal. Feb. 14, 2024) (plaintiff failed to allege how defendants acted intentionally where plaintiff failed to establish "what the standard schedule was at the jail for cell monitoring, or when his cell had been checked").

Finally, the Complaint fails to allege sufficient facts to indicate "a reasonable official in the circumstances would have appreciated the high degree of risk involved[.]" *Sandoval*, 985 F.3d at 669. Plaintiff's conclusory allegation that the risks to Decedent's health would have been "obvious" to any reasonable officer is not sufficient. *See Chue Doa Yang v. Cty. of Yuba*, No. 2:23-cv-00066-TLN-JDP, 2024 U.S. Dist. LEXIS 105350, at *12 (E.D. Cal. June 12, 2024) ("[A] reasonable prison officer, who is not aware that a detainee in general population was at a heightened suicide risk, would not necessarily appreciate any high degree of risk from not conducting a more thorough safety check beyond glancing into the detainee's cell."). Again, the Complaint does not explain how Decedent's suicidal ideations would put officers on notice of a significant risk he would ingest fentanyl or other substances.

For these reasons, the Court grants the County's motion to dismiss Plaintiff's deliberate indifference claim against Does 4-10 based on a failure to perform adequate safety checks.

### 2.    *Claim 2: Deprivation of Familial Relationship (Does 1-10)*

The County moves to dismiss Plaintiff's claim against the Doe defendants for deprivation of a familial relationship arguing that Plaintiff lacks standing to bring this claim and that none of the Doe defendants' alleged conduct "shocks the conscience." ECF No. 6-1 at 17–19.

### a.    *Standing*

The County—citing the Ninth Circuit's case in *Wheeler*—first contends that the relationship between Plaintiff and Decedent was not enduring enough to confer standing on Plaintiff. The Ninth Circuit "has recognized that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children."

*Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). However, "the mere existence of a biological link does not merit equivalent constitutional protection." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018) (internal quotation marks omitted). Rather, to merit constitutional protection, "even biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities[.]" *Id.*

The *Wheeler* case, relied upon by the County, is readily distinguishable from the instant one. In *Wheeler*, plaintiff was the biological son and only known relative of decedent, but had been adopted by other parents as an infant. *Id.* at 1050. The Ninth Circuit held the plaintiff's assertion that he had a "close relationship with [decedent] during part of his childhood and throughout his adult life" was insufficient to support a Fourteenth Amendment loss of companionship claim, as the plaintiff had not alleged the decedent "raised him, otherwise resumed responsibility for his upbringing, or even maintained consistent contact with him during his childhood." *Id.* at 1058. In contrast, here, the Complaint alleges Decedent lived with Plaintiff for his entire childhood and that Plaintiff played an active role in his upbringing. ECF No. 1 ¶ 6. Indeed, the County concedes that Plaintiff alleged a consistent relationship with Decedent during childhood. ECF No. 6-1 at 18.

Instead, the County argues Plaintiff has not sufficiently alleged a continuing relationship with Decedent into adulthood and that it is "telling" Plaintiff lives in Florida with his wife, while Decedent had been homeless in San Diego since 2018. ECF No. 6-1 at 18. Even taking this into account, the Ninth Circuit has recognized that "parents have a liberty interest in the companionship of their adult children[.]" *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1106 (9th Cir. 2014); *see Sinclair v. City of Seattle*, 61 F.4th 674, 679 (9th Cir. 2023) ("[W]e have recognized implicitly that parents maintain a constitutionally protected liberty interest in the companionship of their adult children."). It is not uncommon for adult children to live separately from their parents.

In addition, the Complaint provides evidence Plaintiff and Decedent's relationship continued into Decedent's adulthood. The Complaint alleges that while Decedent's

mental health and substance abuse issues had created "some past conflicts" between the two, Plaintiff and Decedent nevertheless regularly communicated by telephone after Decedent was arrested, Plaintiff was "eager" to support Decedent in his goal of being clean and sober upon release, and Plaintiff and Decedent had discussed the possibility of Decedent moving to Florida upon his release for familial support. *Id.* ¶ 14.

The Court concludes this is sufficient at the pleading stage for Plaintiff to show standing.

### b.    Conduct that "Shocks the Conscience"

To state a claim for deprivation of familial relationship, Plaintiff must allege that the Doe defendants engaged in conduct that "shocks the conscience." *Wilkinson*, 610 F.3d at 554; *see Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) ("To amount to a violation of substantive due process, however, the harmful conduct must shock the conscience or offend the community's sense of fair play and decency.") (internal quotation marks omitted).

Here, as explained above, the Court has already found Plaintiff's allegations do not sufficiently set forth a plausible claim for deliberate indifference against the Doe defendants. For the same reasons, the Court concludes Plaintiff has not sufficiently pleaded that the Doe defendants engaged in conduct that "shocks the conscience." *See Est. of Bews v. Cty. of L.A.*, No. CV 23-9775 PA (JPRx), 2024 U.S. Dist. LEXIS 48671, at *14 (C.D. Cal. Feb. 23, 2024) (dismissing deprivation of familial relationship claim where plaintiff failed to plead viable deliberate indifference claim); *Hernandez v. Cty. of Santa Clara*, No. 19-cv-07888-EJD, 2020 U.S. Dist. LEXIS 102568, at *14 (N.D. Cal. June 11, 2020) (same).

For these reasons, the Court grants the County's motion to dismiss Plaintiff's deprivation of familial relationship claim.

///

///

///

### 3.    Claim 3: Deliberate Indifference (Monell) (County)

#### a.    Monell Generally

Municipal entities, such as the County, "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipal entity can be held liable only if a "policy or custom" of the municipality "inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

#### b.    Deprivation of a Constitutional Right

The threshold question as to whether Plaintiff can establish *Monell* liability is whether a constitutional violation has occurred. *See Lockett v. Cty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020) (*Monell* claims are "contingent on a violation of constitutional rights.") (internal quotation marks omitted). Here, Plaintiff alleges Decedent's "overdose and death was a violation of his Fourteenth Amendment rights to safe conditions to confinement and to be protected while in custody." ECF No. 1 ¶ 69.

"When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *See Deshaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). At this stage, the Court determines Plaintiff has plausibly set forth a constitutional violation based on the conditions of his confinement. *See Induna v. Pima Cty.*, No. CV-22-00512-TUC-SHR, 2023 U.S. Dist. LEXIS 204375, at *18 (D. Ariz. Nov. 15, 2023) (allegation pretrial detainee acquired drugs within the jail, amongst other claims, sufficient to show a constitutional injury).

### c.    Policy or Custom

The Court next examines the legal framework of Plaintiff's *Monell* claims. A plaintiff may recover under *Monell* under one of three theories. *Clouthier*, 591 F.3d at 1249. First, "a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Id*. at 1249 (quoting *Monell*, 436 U.S. at 708). Second, "under certain circumstances, a local government may be held liable under § 1983 for acts of 'omission,' when such omissions amount to the local government's own official policy." *Id*. Third, "a local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id*. at 1250 (internal quotation marks omitted).

Here, Plaintiff alleges Decedent's death was the result of the County's "unconstitutional policy, practice, or custom of not preventing fentanyl and other illicit drugs from entering detention facilities run by the San Diego County Sheriff's Department, including but not limited to a policy, practice, and custom of not screening San Diego Sheriff's Department employees entering those facilities[.]" ECF No. 1 ¶ 66. Under Ninth Circuit precedent, "[a] policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). In an "omission" action, a plaintiff must show the municipality's policy of inaction "amounts to deliberate indifference to the plaintiff's constitutional right, and that the policy caused the violation, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Tsao*, 698 F.3d at 1143 (alteration in original) (internal quotation marks and citation omitted).

The County contends Plaintiff's allegation of an unconstitutional policy, practice or custom is made "without any factual support." ECF No. 9 at 7. The Court does not agree. The Complaint sets forth several factual allegations underpinning Plaintiff's claim.

First, Plaintiff alleges that on the day Decedent was found unresponsive in his cell, his cellmate was also found "suffering from a suspected fentanyl overdose." *Id.* ¶ 30. Several other detainees are also alleged to have been taken to the hospital for drug overdoses on the same day. *Id.* Second, Plaintiff alleges that there were 146 suspected overdoses in detention facilities run by the County in 2023 and more than 200 suspected overdoses in 2021 and 2022. *Id.* ¶ 33. Finally, Plaintiff notes that the County has not implemented recommendations that its deputies be screened for drugs before entering detention facilities in San Diego County. *Id.* ¶¶ 34–42. The County's rejection of these suggested measures supports an inference that there are no mandatory measures in place requiring deputies to be screened for drugs before entering detention facilities.[5]

For these reasons, the Court denies the County's motion to dismiss Plaintiff's *Monell* claim. *See Anderson v. Cty. of Alameda*, No. 22-cv-01577-JSC, 2022 U.S. Dist. LEXIS 116090, at *4–5 (N.D. Cal. June 30, 2022) (finding similar allegations sufficient to support a *Monell* claim); *see also Inzunza v. Pima Cty.*, No. CV-22-00512-TUC-SHR, 2023 U.S. Dist. LEXIS 204375, at *22 (D. Ariz. Nov. 15, 2023) ("The alleged failure to address the frequent overdoses and deaths in the Jail from illicit drugs by declining to screen a potential source of those drugs supports the inference this policy of inaction was deliberately indifferent to the health and safety of the detainees in the Jail and was the moving force behind [decedent's] death.").[6]

---

[5]    The instant case is, therefore, distinguishable from the *Saxton v. County of Sonoma*, No. 21-cv-09499-SI, 2022 U.S. Dist. LEXIS 75762 (N.D. Cal. Apr. 26, 2022), decision cited by the County. In *Saxton*, plaintiffs failed to support their *Monell* claim with *any* factual allegations beyond conclusory allegations regarding the possession of narcotics and drug overdoses inside jail facilities. *Id.* at *10–11.

[6]    The Court notes the County's motion to dismiss Plaintiff's *Monell* claim was based on its argument Plaintiff had not sufficiently pleaded either a constitutional violation or a custom, pattern, or practice. ECF Nos. 6-1 at 19–20; 9 at 4–6. The County did not, for

### 4.    Claim 4: Negligence (Does 1-10)

In California, negligence "consists of a failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm." *City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 753–54 (2007). "In order to establish negligence under California law, a plaintiff must show that the defendant had a legal duty to use due care, that the defendant breached that duty, and that the breach was a legal or proximate cause of plaintiff's injury." *USAir v. United States Dep't of the Navy*, 14 F.3d 1410, 1412 (9th Cir. 1994).

Here, Plaintiff's negligence claim against the Doe defendants mirrors his deliberate indifference claim. Specifically, Plaintiff alleges Does 1-3 breached their duty of care "by failing to house [Decedent] in an appropriate housing unit with the enhanced monitoring reasonably necessary to safeguard [Decedent] against his known drug addiction and known desire to inflict self-harm." ECF No. 1 ¶ 79. Plaintiff further alleges Does 4-10 breached their duty of care "by failing to conduct adequate safety checks of [Decedent] in the hours leading to his death." *Id.*   The County contends Plaintiff has failed to allege a causal connection between the Doe defendants' conduct and Decedent's death. ECF No. 6-1 at 21. The Court agrees.

While prison officials owe a duty to pretrial detainees,[7] Plaintiff has failed to adequately allege how the Doe defendants breached that duty to cause Decedent's death. As already outlined above, the Complaint does not set forth sufficient facts regarding the

---

example, make any arguments with respect to the "moving force" element of a *Monell* claim.

[7]    "In California, prison officials owe detainees a duty to protect them from foreseeable harm." *Cotta v. Cty. of Kings*, 686 F. App'x 467, 469 (9th Cir. 2017) (citing *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 251 (2008) ("[W]e today add California to the list of jurisdictions recognizing a special relationship between jailer and prisoner.")).

circumstances under which Decedent was transferred into general population housing, including notably when this transfer occurred. The Complaint also does not provide sufficient details as to how the safety checks (if any) performed by Does 4-10 were inadequate. It is therefore unclear what specific conduct by the Doe defendants is meant to form the basis of Plaintiff's negligence claim or how any alleged breach caused Decedent's injury.[8]

For these reasons, the Court grants the County's motion to dismiss Plaintiff's deprivation of familial relationship claim.[9]

>    5.    *Claim 5: Violation of Cal. Civ. Code § 52.1 (County and Does 1-10)*

Plaintiff's fifth claim alleges the Doe defendants' deliberate indifference to Decedent's health and safety constitutes a violation of California's Bane Act, Section 52.1 of the California Civil Code. ECF No. 1 ¶¶ 83–88.

---

[8]    In arguing that the Complaint sufficiently sets forth a plausible negligence claim, Plaintiff assumes the Complaint has sufficiently set forth a plausible claim for deliberate indifference. Because negligence "requires a much lower level of culpability than deliberate indifference," *Cravotta*, 2024 U.S. Dist. LEXIS 26740, at *49, Plaintiff argues he has "more than met the pleading standard for his negligence claim," ECF No. 8 at 22. Because the Court has already concluded Plaintiff did not plausibly allege a plausible § 1983 deliberate indifference claim against the Doe defendants, however, this argument fails. *See Est. of Schuck v. Cty. of San Diego*, No. 23-cv-785-DMS-AHG, 2024 U.S. Dist. LEXIS 22653, at *44 (S.D. Cal. Feb. 8, 2024) (negligence claim fails where deliberate indifference claim was insufficiently pled).

The *Cravotta* case cited by Plaintiff is further inapposite. ECF No. 22. In *Cravotta*, the Court *dismissed* a plaintiff's negligence claim where plaintiff had not sufficiently alleged how officer defendants breached their duty to conduct direct-view safety checks or how any such measures would have produced a different outcome. 2024 U.S. Dist. LEXIS 26740, at *50. Plaintiff's Complaint suffers from the same deficiencies.

[9]    In light of the Court's holding, the Court declines to consider the County's alternative argument that various California statutory provisions immunize the Doe defendants from Plaintiff's claim. ECF No. 6-1 at 21. The Court cautions the County that if it intends to renew this argument, it may not simply cite a list of provisions without explaining how they apply.

The Bane Act "civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation or coercion." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (internal quotation marks omitted). "There are two distinct elements for a section 52.1 cause of action." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015). "A plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Id.*

Plaintiff contends his Bane Act claim should proceed because the Complaint adequately alleges the violation of "clearly established law under the Fourteenth Amendment." ECF No. 8 at 25. However, the Court has already concluded the Complaint fails to sufficiently state a plausible § 1983 deliberate indifference claim against the Doe defendants. For these same reasons, Plaintiff has also failed to state a cognizable claim under the Bane Act. *See Est. of Bonin v. Cty. of San Diego,* No. 23-cv-2158-MMA-MSB, 2024 U.S. Dist. LEXIS 183052, at *20 (S.D. Cal. Oct. 7, 2024) ("Although Plaintiff may rely on Defendants' alleged deliberate indifference to state a Bane Act claim against them . . . the latter rises and falls with the former."); *Cravotta*, 2024 U.S. Dist. LEXIS 26740, at *43 (granting motion to dismiss Bane Act claim were plaintiff failed to sufficiently plead deliberate indifference claim); *Flores v. Cty. of Fresno*, No. 1:19-cv-01477-DAD-BAM, 2021 U.S. Dist. LEXIS 144229, at *28 (E.D. Cal. Aug. 2, 2021) (same).[10]

For these reasons, the Court grants the County's motion to dismiss Plaintiff's Bane Act claim.

///

///

---

[10]    Plaintiff's Bane Act claim against the County fails for the same reasons, because it is predicated on the County being liable "for the damages arising from the [Doe defendants] violation of 52.1." ECF No. 1 ¶ 87

### 6. *Claim 6: Violation of Cal. Gov. Code § 845.6 (County)*

Under California Government Code § 845.6, generally, "[n]either a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody." Cal. Gov't Code § 845.6. The statute, however, provides an exception "if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." *Id.* "Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care." *Watson v. State of Cal.*, 21 Cal. App. 4th 836, 841 (1993).

Here, Plaintiff alleges Does 4-10 should have known of Decedent's "urgent medical need" by performing adequate safety checks. ECF No. ¶ 92. As already outlined above, however, the Complaint does not sufficiently explain *how* the safety checks performed by Does 4-10 were inadequate. As pleaded, the Complaint is unclear as to what specific conduct performed—or not performed—by Does 4-10 is meant to form the basis of Plaintiff's claim. The Complaint is also vague as to how Does 4-10 would know or have reason to know that Plaintiff was in immediate need of medical care. *See Frary v. Cty. of Marin*, 81 F. Supp. 3d 811, 842 (N.D. Cal. 2015) (granting motion for summary judgment on plaintiff's section 854.6 claim under circumstances where deputy may have had knowledge of decedent's drug ingestion, but there was no evidence the deputy understood at any point decedent had an immediate need for medical care; the fact that the deputy "could have provided additional monitoring . . . does not alone create liability under section 845.6").

For these reasons, the Court grants the County's motion to dismiss Plaintiff's survival claim under California Government Code § 845.6.

### 7. *Claim 7: Wrongful Death (County and Does 1-10)*

In California, "[a] cause of action for wrongful death is . . . a statutory claim. *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006) (citing Cal. Civ. Proc. Code §§ 377.60–377.62)). "Its purpose is to compensate specified persons—heirs—for

the loss of companionship and for other losses suffered as a result of a decedent's death." *Id.* "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the *pecuniary loss* suffered by the *heirs*." *Id.* (internal quotation marks omitted) (emphasis in original).

Here, Plaintiff alleges Decedent's wrongful death resulted from the Doe defendants' negligence and Does 4-10's violation of Government Code § 845.6. ECF No. 1 ¶¶ 99, 101–102. The Court has already concluded that the Complaint fails to sufficiently state plausible § 1983 deliberate indifference or California Government Code § 845.6 claims against the Doe defendants. For these same reasons, Plaintiff has also failed to state a cognizable wrongful death claim. Plaintiff's claim that the County should be held vicariously liable for the actions of the Doe defendants is dismissed for the same reasons.

### D.    Qualified Immunity

The Court briefly addresses the County's arguments the Doe defendants are entitled to qualified immunity on Plaintiff's claims. ECF No. 6-1 at 25–26. Because the Court has already concluded Plaintiff has not set forth any plausible claims for relief against the Doe defendants, the County's motion to dismiss on the grounds of qualified immunity is denied as moot. *See Himes v. Gastelo*, No. 2:18-cv-00327-PSG (MAA), 2020 U.S. Dist. LEXIS 76465, at *32 (C.D. Cal. Mar. 9, 2020) ("There is no Section 1983 violation, and Defendants have no need for qualified immunity[.]") report and recommendation adopted by 2020 U.S. Dist. LEXIS 75640, at *1 (C.D. Cal. Apr. 29, 2020); *Uriarte v. Schwarzenegger*, No. 06cv1558-MMA (WMC), 2011 U.S. Dist. LEXIS 120346, at *25 (S.D. Cal. Oct. 18, 2011) ("Because the Court has found that Plaintiff fails to allege facts sufficient to show that Defendants . . . violated his constitutional rights, it need not further decide whether these defendants are entitled to qualified immunity.").

///

///

### E.    Leave to Amend and Request for Limited Discovery

The County requests that its motion to dismiss be granted without leave to amend. ECF Nos. 6-1 at 26, 9 at 10. Plaintiff requests that if the Court determines any of his claims are insufficiently pleaded, that Plaintiff be granted both leave to amend and to conduct an initial phase of early discovery narrowly aimed at determining the identities of the Doe defendants and other "key facts" relevant to Plaintiff's claims. ECF No. 8 at 32–33.

At this early stage of the proceedings, the Court is not convinced Plaintiff cannot cure the defects identified herein via amendment. Accordingly, the Court grants Plaintiff leave to amend. *See Knappenberger v. City of Phx.,* 566 F.3d 936, 942 (9th Cir. 2009) ("Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts.") (internal quotation marks omitted).

Nevertheless, the Court denies Plaintiff's request for leave to conduct an initial phase of discovery. The Ninth Circuit has recognized that a plaintiff should be provided an opportunity to identify unknown defendants through discovery *unless* it clear "that the complaint would be dismissed on other grounds." *Wakefield,* 177 F.3d at 1163. Here, Plaintiff has failed to sufficiently state a plausible claim against the Doe defendants. For these reasons, the Court denies Plaintiff's request for early discovery. *See Valdez v. One Unknown Named Med. Tech. Assistant of the Cal. State Prison-Sacramento,* 2009 U.S. Dist. LEXIS 83276, at *10 (E.D. Cal. Aug. 26, 2009) (denying request for early discovery where complaint failed to state a claim).

## IV.    CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the County's motion as follows:

1.    The Court **DENIES** the County's motion to dismiss under Rule 12(b)(7) for failure to join a necessary party.

///

24-cv-733-RSH-SBC

2.      The Court **DENIES** the County's motion to dismiss the Doe defendants, to the extent the County's motion is based solely on their identities being unknown.

3.      The Court **GRANTS** the County's motion to dismiss Claims 1, 2, 4, 5, 6, and 7 of Plaintiff's Complaint.

4.      The Court **DENIES** the County's motion with respect to Claim 3 of Plaintiff's Complaint.

5.      The Court **DENIES** the County's motion to dismiss the Doe defendants on the basis of qualified immunity as moot.

6.      The Court **GRANTS** Plaintiff leave to amend but **DENIES** Plaintiff's request for early discovery. If Plaintiff chooses to file a First Amended Complaint, Plaintiff must do so within **fourteen (14) days** of the date of this Order. Defendant's time to respond to the operative pleading will begin to run on the earlier of the date Plaintiff files a First Amended Complaint or **fourteen (14) days** from the date of this Order.

**IT IS SO ORDERED.**

Dated: October 30, 2024

_____
Hon. Robert S. Huie
United States District Judge